WILLIAM A. FULTON, AS RECEIVER OF FRANCO-AMERICAN PHOSPHATE COMPANY, *Plaintiff in Error*, v. FREDERICK GESTERDING, AS DEFENDANT, AND FLORIDA CENTRAL & PENINSULAR RAILROAD COMPANY, GARNISHEE, *Defendants in Error.*

1. The answer of a garnishee denying indebtedness to and possession of property of the defendant, is sufficient under section 1673, Rev. Stats. of 1892, to enable the garnishee upon the trial of the issues raised by a traverse thereof, to avail himself of the defense of *res adjudicata* or estoppel by reason of a former judgment in garnishment rendered in a suit between himself and the creditor, without formally or specially pleading such defense.

2. The *prima facie* effect of the record of a judgment in favor of a garnishee rendered upon a traverse of his answer denying generally indebtedness to and possession of property of the defendant, is merely that the garnishee was not at the time of the service of the writ, the time of filing his answer or at any period of time between those dates indebted to the defendant, in such manner as to be liable to a writ of garnishment and that he did not at such times have any chattels, money, effects or credits of said defendant subject to garnishment, in his hands, custody or control.

3. An answer to a second writ of garnishment setting up a prior judgment for the garnishee in garnishment proceedings between the same parties upon issues raised by traverse of the garnishee's general answer in the former suit more than two years before the second garnishment was instituted, with no allegation that any matter in issue in the second suit, was also

in issue in the first, and decided for the garnishee, and no allegation that any indebtedness or property sought to be subjected by the second writ was involved in the first, is bad.

4. In order to sustain the contention of *res adjudicata*, the complete record of the former suit including the judgment therein should be produced and not incomplete or detached portions thereof, and if the matter in issue in the former suit does not appear upon the face of the record offered as evidence of such former adjudication it may be shown by extrinsic evidence.

5. If it appears from the record of a former judgment offered in evidence as an estoppel that several distinct matters may have been litigated upon one or more of which the judgment was rendered, the whole subject-matter of the action will be at large and open to a new contention unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined.

6. Under section 127, chap. 4524, act approved June, 1897, known as the Negotiable Instruments Law, a draft or bill of exchange not specifying a particular fund for payment does not of itself operate as an assignment of the money on deposit with the drawee, though the amount named in the instrument is the precise amount of the deposit in the drawee's hands.

This case was decided by Division B.

Writ of error to the Circuit Court for Marion county.

### Statement.

On May 17th, 1900, plaintiff in error sued out a writ of garnishment against the Florida Central & Peninsular Railroad Company, in a suit against Frederick Gesterding then pending in the Circuit Court of Marion county. On June 14, 1900, the garnishee filed its answer denying any indebtedness to, and the possession or control of any property of, Gesterding when the writ was served, the answer filed and at all times between those dates. Plaintiff traversed this answer June 21, 1900.

On March 28th, 1902, the court, against plaintiff's objections, permitted the garnishee to file its further answer. The first paragraph thereof alleged that on April 18, 1899,

the Circuit Court of Nassau county having jurisdiction of a cause there pending wherein the plaintiff was plaintiff, Frederick Gesterding was defendant, and the railroad company was garnishee, upon the same cause of action as in the present suit, rendered judgment upon the issues that the garnishee had no property, moneys, chattels or effects in its hands, custody or control belonging to Gesterding, which judgment remained in full force and effect; that the writ of garnishment in that case was served about October 7, 1897; that the garnishee's answer was filed December 6, 1897; that since the last named date the railroad company had not been indebted to Gesterding, nor had any moneys, goods, chattels and effects of Gesterding in its hands, possession or control which it yet had at the time of the service of the writ in the present case, nor at the time of making the further answer nor at any time between such periods.

The second paragraph alleges substantially the same matters as the first except there is no allegation that the causes of action were the same, and the pleadings in the former suit are set out more fully. It shows that the former writ of garnishment was in the ordinary form requiring the railroad company to appear on November 1, 1897, and state under oath in writing whether it was at the time of the service of the writ, or at the time of its answer, or at any time between such periods indebted to Gesterding and what goods, money, chattels or effects of Gesterding it had in its possession or control at such times. It is alleged that the writ was served October 7th, 1897; that on December 6th, 1897, the railroad company filed its answer to the writ wherein it denied that it had, and alleged that it had not at the service of the writ, the filing of its answer, or at any time between such dates in its possession, custody or control any goods, moneys, chattels or effects of Gesterding, and that during the time mentioned it was not indebted to the latter. It is further alleged that on September 5, 1898, plaintiff filed his traverse of the garnishee's answer to the

effect that the railroad company had not discovered what goods, chattels and effects of Gesterding it had in its hands, possession or control at the time of the answer or of the service of the writ, or between those periods of time.

It is further alleged that on April 18, 1899, the cause was submitted to the judge, a jury being waived, and, after hearing evidence upon the issues submitted, the judge rendered and pronounced his judgment therein to the effect that said traverse be not sustained, and that the answer of the garnishee had discovered that it had no property, money, chattels or effects in its hands, custody or control belonging to Gesterding. This further answer was duly traversed by the plaintiff.

At the trial plaintiff introduced in evidence certain verified pleas filed by the railroad company in a suit brought against it in the United States Circuit Court for the Fifth Circuit, Southern District of Florida, by one Johann Carstens, wherein it was alleged that the sum of $2,100, claimed in the bill of particulars in that suit, was originally deposited by one A. Neumann with the railroad company and E. D. Lukenbill, its agent, in order to procure the release of certain phosphate rock, title to which was claimed by Neumann and which the railroad company held as garnishee under and subject to certain writs of garnishment, one issued by the Circuit Court of Nassau county in a suit wherein Fulton, receiver, was plaintiff, and Neumann and Gesterding were defendants, and the railroad company and Lukenbill were garnishees, the other a similar writ issued in a similar suit pending in the Circuit Court of Marion county against Gesterding alone; that said phosphate rock and said sum of money were held by the railroad company subject to said writs of garnishment and to abide the final determination of said suits, and in the event it was determined that said phosphate rock or said sum of money so deposited to procure release thereof was subject to the lien of said writs of garnishment then the railroad company was empowered and authorized to use and apply said sum to the

payment of any judgment entered against it as such garnishee. Plaintiff also proved that after the writs of garnishment in the two suits mentioned in the plea were served Neumann as agent for Gesterding deposited with the railroad company money—though the amount is not stated—to indemnify the railroad company against loss as garnishee in order to procure the release of certain phosphate rock in its hands at the time of the service of the writs.

The garnishee introduced in evidence a draft as follows:

"OCALA, Fla., Feby. 28, 1898.
$2100.  Pay to the order of Mr. J. Carstens two thousand one hundred dollars value received and charge same to account of,                             ALB NEUMANN.
To Mr. E. D. Lukenbill, Agent,
              Fernandina."

It appears from the evidence that this draft was never accepted or paid by the railroad company, nor by Lukenbill, its agent. It also appears that Carstens succeeded Neumann as agent for Gesterding, and that the draft was originally given him to collect as such agent.

In 1899, Gesterding failed in business and gave one Dr. Sillem a power of attorney authorizing the latter to act for him in winding up his affairs in the United States. Sillem as such agent then gave the draft to Carstens for collection, with authority to retain from the proceeds a debt of $1,000, due by Gesterding, but Carstens had never been able to collect the draft or to procure a promise from the railroad company to pay it. There is no evidence aside from the draft tending to show an assignment of the deposit in the hands of the railroad company to Carstens or Sillem.

The garnishee also introduced in evidence certain parts of the original record of the suit in Nassau county as follows: Affidavits of Albert Wright and W. A. Fulton, notice of institution of the suit by attachment and service on Alb. Neumann, writ of garnishment, objection to answer of E. D. Lukenbill, garnishee, by plaintiff, order

of court as to oral examination of E. D. Lukenbill, testimony of Lukenbill taken thereon, judgment rendered April 18, 1899.

The garnishee proved that the answer of the railroad company as garnishee in the suit in Nassau county was lost, and that it was substantially the same as the answer of Lukenbill in that suit, but Lukenbill's answer was not introduced. The evidentiary bill does not contain copies of the parts of the record so introduced in evidence. The evidence does not disclose the precise issues upon which the former judgment in garnishment was rendered, nor does it show that the $2,100, now sought to be subjected to the present writ was in the hands of the railroad company at or prior to the filing of its answer as garnishee in that suit.

The trial in the present case was had March 31, 1902, and the jury rendered its verdict in favor of the garnishee, finding that it did not at the time of the service of the writ, the filing of the further answer, nor at any time between those dates have any goods, money, chattels or effects of Gesterding in its hands, possession or control, subject to the writ of garnishment, and that it was not indebted to Gesterding during the time mentioned. A motion for a new trial was overruled, judgment entered for the garnishee upon the verdict, and plaintiff sued out this writ of error to review the judgment. Other facts pertinent to the questions considered are stated in the opinion.

*John G. Reardon* for plaintiff in error.

No appearance for defendant in error.

CARTER, P. J.—Many errors are assigned, some of which are so imperfectly presented by the ordinary bill that they will not be considered, and others are without merit, so that the discussion will be confined to two questions, *viz*: The ruling permitting the further answer to be filed, and that denying the motion for a new trial.

I.  The garnishment statutes provide that upon traverse of the answer of a garnishee "the court shall direct without the formality of pleading a jury to be empanelled to inquire what is the true amount due from such garnishee," etc.  Sec. 1673, Rev. Stats.  In *Howe v. Hyer,* 36 Fla. 12, 17 South. Rep. 925, the court held, construing this statute that under such issue the court should allow any legal and proper evidence and defense that would show the true amount due from the garnishee to the defendant.  Under this decision the matters attempted to be set up in the further answer as *res adjudicata* or estoppel were not required to be specially pleaded, but might have been proven under the issues raised by the traverse of the first answer, if they constituted a defense.  *Little v. Barlow,* 37 Fla. 232, 20 South. Rep. 240.  This court has never decided whether it would be error to permit an answer in garnishment to be filed setting up special defenses which could be made available under the answer denying generally indebtedness and custody or control of property, nor is it necessary to determine the question in this case as the court below should have denied the application to file the further answer on another ground, *viz:* that its allegations were insufficient to show *res adjudicata* or estoppel by reason of the alleged judgment in the former garnishment.  The effect of the further answer so far as the judgment set up is concerned, was simply this, that on the 18th day of April, 1899, it was judicially determined that the railroad company was not on October 7th, nor December 6th, 1897, nor at any period of time between those dates indebted to Gesterding in such a manner as to be liable to a writ of garnishment, and that it did not at such times have any chattels, money, credits or effects of Gesterding subject to garnishment in its hands, custody or control.  *Boyle v. Maroney,* 73 Iowa 70, 35 N. W. Rep. 145, S. C. 5 Am. St. Rep. 657.  The writ issued in the present case required the garnishee to answer, not what it had in 1897, but what it held on May 7th, 1900, or thereafter, and the mere fact that in a prior suit it was de-

termined that more than two years previous to that time
the garnishee was not liable in garnishment afforded no
answer to the present writ.    It is true that the answer
further alleged that the railroad company had not been in-
debted to Gesterding since December 6, 1897, and that
no property of Gesterding had come into its hands since
that date, which remained in its hands or for which it re-
mained liable at the time of the last writ issued, but this al-
legation amounts merely to a repetition of the denials of the
answer already on file, and without some further allegation
showing that it would become material to the garnishee to
prove the former judgment, the further answer as framed
would introduce irrelevant matters and confuse and em-
barrass a trial of the real issues between the parties.    There
is no allegation in the further answer that the railroad
company now had, or that plaintiff claimed it now had in
its hands any property that was involved in the issues tried
in the former garnishment, nor was there an allegation
that the issues in the former garnishment embraced any
indebtedness which was sought to be reached by the last
writ.    It is true there is a general allegation that the judg-
ment in the former garnishment was rendered "upon the
same cause of action as herein," but this is a mere legal con-
clusion supported by no allegation of fact.    But even if we
treat such allegation as one of fact, the answer will still be
bad for the mere fact that it has been judicially determined
that two years before the present suit the property or debt
now sought to be subjected was not then liable to garnish-
ment would not demonstrate that such property is not now
liable.    The answer does not show that in the former suit
the money or property now sought to be subjected was
adjudicated not to be the property of Gesterding, nor that
any issue was presented and determined in that suit which
would defeat the plaintiff in the present one.    The issues
in the two suits were not necessarily the same and there
is no allegation in the plea to make them such.    The judg-
ment set up might be pertinent evidence upon the trial of

the issues in the last suit when connected with other evidence, but as pleaded it constituted no bar. See authorities cited in the next paragraph of this opinion. The court should have refused permission to file the further answer.

II. The testimony shows without contradiction that Neumann in making the deposit of $2,100, with the railroad company acted as the agent and used the money of Gesterding, and that the draft drawn by Neumann in favor of Carstens was originally given to the latter as Gesterding's agent. Though it was subsequently redelivered to Carstens by Sillem another agent of Gesterding for the purpose of collection and to pay himself a sum from the proceeds, the railroad company has never accepted the draft or in any way become liable to pay it. Unless, therefore, the draft operated as an assignment of the deposit of money to Carstens, its possession by the latter would not affect plaintiff's right to garnish the money deposited with the railroad company. There is no suggestion in the testimony that the deposit was ever assigned to Carstens unless the draft alone operated as an assignment. That it did not is clear from the terms of the negotiable instruments law which was in force when the draft was executed. See section 127, chap. 4524, act approved June 1, 1897; sec. 211 Crawford's annotated Neg. Insts. Law (2nd ed.) ; Eaton & Gilbert on Commercial Paper, sec. 133, p. 578.

In the statement of facts we have shown that the judgment and certain other parts of the record in the former garnishment proceeding were introduced in evidence by the garnishee. These documents do not appear in the evidentiary or ordinary bill, but the further answer under which they were introduced purports to give the substance of the pleadings. The answer of the garnishee under our statutes as we have shown is very general in its terms, simply denying indebtedness and the possession of property subject to the writ, and under it many issues may be litigated. It is sufficient to raise an issue as to whether the garnishee is in fact indebted, or whether in fact he holds

property of the defendant, as well as to raise an issue as to the liability to garnishment of a debt due or property held by the garnishee, and as the scope of the issues that may be litigated under such an answer is so broad, the court can seldom ever know from a mere inspection of the record proper the precise issues upon which a judgment for the garnishee was based. It becomes necessary, therefore, in such cases to ascertain from other evidence the precise issues determined when such judgment is pleaded or shown in evidence in another action, because the effect of the record of the judgment alone is merely that the garnishee owed no debt, and had no property in his possession which were subject to garnishment when the writ was served, or the answer filed, and between these dates. The testimony here shows that at the time the former garnishment was served the garnishee had in its hands phosphate rock which was either Neumann's or Gesterding's; that thereafter (whether before or after the garnishee answered is not shown), Neumann as Gesterding's agent deposited with the garnishee $2,100, in order to procure the release of the phosphate rock. The evidence does not show any of the testimony introduced upon the former trial, nor what defense was in fact relied upon at that trial, nor that the money now on deposit was or could then have been in issue. It is shown that the money was when the present writ issued in the hands of the railroad company and liable to garnishment, and there is nothing to show that at the time the answer in the former suit was filed, this money was then in the hands of the railroad company, nor that it was in any manner made an issue in that suit. In *Little v. Barlow, supra,* it was held that in order to sustain the contention of *res adjudicata,* the complete record in the former suit including the judgment therein should be produced, and not incomplete or detached portions thereof, and that if the matter in issue in the former suit does not appear upon the face of the record offered as evidence of such former adjudication, it may be shown by extrinsic evidence. While

there is some conflict among the authorities the better rule, supported by reason and the weight of authority, constrains us to hold that if it appears from the record of a former judgment offered in evidence as an estoppel that several distinct matters may have been litigated upon one or more of which the judgment was rendered, the whole subject-matter of the action will be at large and open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined. *DeSollar v. Hanscome,* 158 U. S. 216, 15 Sup. Ct. Rep. 816; *Sawyer v. Nelson,* 160 Ill. 629, 43 N. E. Rep. 728; *Lewis v. Ocean Nav. & Pier Co.,* 125 N. Y. 341, 26 N. E. Rep. 301; *Russell v. Place,* 94 U. S. 606; *Chrisman v. Harman,* 29 Gratt, 494; *Dygert v. Dygert,* 4 Ind. App. 276, 29 N. E. Rep. 490; *Ryan v. Potman,* 62 Ill. App. 134; 2 Black on Judgments, sec. 629; 1 Freeman on Judgments, sec. 276. Testing the facts of this case by the rule of law announced above the former judgment does not operate as an estoppel so as to prevent the plaintiff from subjecting the money deposited with the railroad company to the present writ of garnishment. The verdict was, therefore, not supported by the evidence and the court erred in refusing the motion for a new trial.

The judgment is reversed and a new trial granted.

MAXWELL and COCKRELL, JJ., concur.

TAYLOR, C. J., and SHACKLEFFORD, J., concur in the opinion.

HOCKER, J., not sitting.